UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALICK KEVIN MCIVER,

          Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.
_____/

No. 13-14103

District Judge Nancy G. Edmunds

Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

Plaintiff Alick Kevin Mciver ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case is remanded for further administrative proceedings consistent with this Report and Recommendation.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI on December 16, 2009 alleging disability as of December 31, 2006 (Tr. 213-219, 220-226). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on June 8, 2011 (Tr. 63). On July 19, 2011, Administrative Law Judge ("ALJ") John A. Ransom issued a fully favorable decision, finding that Plaintiff was disabled as of December 31, 2006 (Tr. 108). On August 19, 2011, the Appeals Council remanded the case to the administrative level on the basis that the favorable finding was not supported by substantial evidence (Tr. 153-157). The Appeals Council noted that ALJ Ransom failed to reconcile the finding of disability with the vocational testimony indicating that an individual with Plaintiff's residual functional capacity ("RFC") could perform a significant number of jobs (Tr. 154). The Appeals Council also noted "very little evidence" pertaining to Plaintiff's condition between the alleged onset date of December 31, 2006 and June, 2009 (Tr. 154). Plaintiff was invited to submit additional evidence for the period between December 31, 2006 and the July 19, 2011 administrative opinion (Tr. 156).

On April 24, 2012, ALJ James J. Kent presided at a second administrative hearing (Tr. 34). Plaintiff, represented by Marvin Jennings, testified (Tr. 38-56), as did Vocational Expert ("VE") Kenneth Browde (Tr. 56-61). On May 24, 2012, ALJ Kent issued a partially favorable determination, finding that Plaintiff was disabled between December 31, 2006 and November 15, 2011, but as of November 16, 2011 was no longer disabled (Tr. 28).

On July 24, 2013, the Appeals Council declined to review the administrative decision (Tr. 1-3). Plaintiff filed suit in this Court on September 26, 2013.

## II. BACKGROUND FACTS

Plaintiff, born July 23, 1954, was 57 at the time of the administrative decision (Tr. 28, 213). He completed high school and worked previously as a press operator (Tr. 245). He alleges disability due to a sleep disorder, anxiety, memory problems, and syncope (Tr. 244).

### A. Plaintiff's April 24, 2012 Testimony

Plaintiff offered the following testimony:

Plaintiff was single and did not have children (Tr. 40). He stood 5' 7" and was "overweight," but his weight did not cause physical limitations (Tr. 40). He had not attended special education classes while in school (Tr. 41). He served in the United States Navy for eight-and-a-half years (Tr. 41).

He had not worked in 15 to 20 years (Tr. 43). After losing his job as a production worker, he experienced anxiety and required excessive sleep (Tr. 44). He was unable to lift more than three pounds or stand for more than 10 minutes (Tr. 44). He was able to walk for extended distances (Tr. 45). He drove, but did not drive well after dark (Tr. 45). He was able to climb a ladder (Tr. 46). Plaintiff was unable to work because of "nerves" (Tr. 46). He did not experience problems reaching or performing fine manipulative activities (Tr. 47). He was "terrible" at math (Tr. 47). He did not experience significant hearing problems (Tr. 48). He experienced "comprehension" problems but was able to read a newspaper and write

a letter (Tr. 49). He experienced difficulty making change (Tr. 49).

Plaintiff required reminders from others to complete tasks (Tr. 49-50). He was generally able to follow the plot of an hour-long television show (Tr. 51). He disliked being in public or interacting with small groups, but was able to attend church each Sunday by "blank[ing] out" other attendees (Tr. 52). He experienced problems interacting with supervisors (Tr. 53). Performing simple production line tasks would confuse him (Tr. 53). Due to physical or mental symptoms, he would be required to miss three days of work each month (Tr. 54).

In response to questioning by his attorney, Plaintiff reported that he experienced difficulty counting higher than 100 (Tr. 54). He stated that he did not know whether he ought to have been placed in special education while in school, adding that his school did not offer a special education program (Tr. 55). He reported that his conflicts with supervisors were due to his comprehension problems (Tr. 55). He required repeated direction to complete workplace tasks (Tr. 56).

### B. Medical Records[1]

#### 1. Treating Records

In November, 2009, Plaintiff underwent an initial psychiatric evaluation by Paul T. Rajasekhar, M.D. (Tr. 350-353). Dr. Rajasekhar noted that Plaintiff appeared younger than

---

[1] Records significantly predating the alleged onset date and current records unrelated to the benefits claim have been reviewed in full but are omitted from the current discussion.

his stated age and looked "generally healthy" (Tr. 350). Plaintiff reported first experiencing panic attacks "three to four" years earlier (Tr. 350). Dr. Rajasekhar noted the "situational stressors" of financial problems and difficulty socializing (Tr. 352). He estimated Plaintiff's intelligence on the low side of normal (Tr. 352). He diagnosed Plaintiff with a generalized anxiety disorder with social phobias and a dependent personality disorder with schizoid features (Tr. 353). October, 2009 treating records note a past history of alcohol abuse (Tr. 337). December, 2009 treating notes state that Plaintiff was doing well (Tr. 318).

Plaintiff resumed psychiatric counseling in June, 2010 (Tr. 375-383). Plaintiff's sister reported to the intake assessor that Plaintiff exhibited symptoms of an obsessive-compulsive disorder (Tr. 375). Plaintiff exhibited a cooperative attitude and was fully oriented but appeared nervous (Tr. 376-378). He admitted to feelings of claustrophobia, paranoia, and worry (Tr. 380). He was diagnosed with alcohol dependence, anxiety, and a dependent personality disorder (Tr. 382). He was assigned a GAF of 42[2] (Tr. 382). In October, 2010, Plaintiff reported good results from the use of Antivan (Tr. 367). In January, 2011, Plaintiff reported reduced symptoms of anxiety (Tr. 402). He denied medication side effects (Tr. 402). The same records stated that Plaintiff would "be ready for discharge" from psychiatric services within two years (Tr. 404). In March, 2011, Plaintiff's counselor opined that

---

[2]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Diagnostic and Statistical Manual of Mental Disorders--Text Revision,* 34 ("*DSM-IV-TR*")(4th ed.2000).

Plaintiff required additional treatment for anxiety (Tr. 362, 412). Notes from a medication review of the same month state that Plaintiff appeared "flighty" and was unable to stay on one subject (Tr. 359). In June, 2011, Plaintiff's counselor found that he experienced moderate limitations in daily activities, and marked limitations in interpersonal functioning and concentration (Tr. 425). In addition, she found that he experienced "severe" anxiety (Tr. 426). The same month, Plaintiff reported that his symptoms of anxiety were lessening (Tr. 427). Physical examination records state that Plaintiff reported balance problems on rare occasions but denied other physical problems (Tr. 435-436). The following month, Plaintiff reported that he was in good physical health (Tr. 443).

August, 2011 counseling notes state that Plaintiff reported walking frequently and feeling calmer (Tr. 451). The following month, he appeared "pleasant and talkative" (Tr. 454). Notes from later the same month state that he was "doing fairly well" (Tr. 456). November, 2011 counseling notes state that Plaintiff was "very anxious, fidgety, and scattered" due to an upcoming consultative examination by the SSA (Tr. 468). November, 14, 2011 counseling notes state that Plaintiff reported that he was preparing his own meals instead of eating prepared meals and as a result, experienced increased self esteem (Tr. 469). Records from the next month state that Plaintiff was doing "fairly well" (Tr. 472). He reported that he had been less anxious in the past three months (Tr. 478).

### 2. Non-Treating Records

In August, 2006, Edward G. Tava, Ed.D performed a consultative psychological

evaluation, noting Plaintiff's report of insomnia, anxiety, concentrational problems, and a learning disability (Tr. 312). Plaintiff reported working as a punch press operator, adding that he left the job because "there was a lot of tension" (Tr. 312). He had tried without success to find another job (Tr. 312). Plaintiff reported that he able to work on his truck and take care of household chores for himself and his mother (Tr. 313).

Dr. Tava observed that Plaintiff appeared anxious with low self-esteem (Tr. 313). He was in touch with reality with "adequate intelligence" but poor thought organization (Tr. 314). He displayed good immediate, recent, and past memory (Tr. 314). Dr. Tava assigned Plaintiff a GAF of 55 with a guarded prognosis[3] (Tr. 315-316).

In November, 2011, Paul D. Winkler, PsyD performed a psychiatric evaluation on behalf of the SSA, noting Plaintiff's report of sleep disturbances and anxiety around others (Tr. 385-286). Plaintiff denied physical problems (Tr. 385). He reported walking up to five miles a day (Tr. 386). Dr. Winkler noted that Plaintiff appeared anxious, but was socially appropriate with "fair to good" concentration (Tr. 386). He exhibited an intact thought process (Tr. 386). Dr. Winkler found that Plaintiff's insight and judgment were fair (Tr. 386). Dr. Winkler, noting diagnoses of a generalized anxiety disorder and dysthymia, assigned Plaintiff a GAF of 55 (Tr. 388). He concluded that Plaintiff was capable of performing "basic 1-2 step/direction tasks" (Tr. 388). In a separate medical source statement,

---

[3]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *DSM-IV-TR* at 32.

Dr. Winkler found that Plaintiff experienced mild limitations in interacting with the public, supervisors, and coworkers (Tr. 391-392).

### C. Vocational Testimony

VE Browde classified Plaintiff's former work as a press operator as skilled and exertionally medium[4] (Tr. 57, 310). The ALJ then posed a question to the VE, describing a hypothetical individual:

> [T]his individual is able to perform at the full range of physical. He has the following non-exertional limitations: Limited contact with the public and coworkers. Limited stress situations. He can do simple, routine, repetitive tasks. He can only have occasional supervision, and he's not capable of performing work requiring constant, close attention to detail. He can only work at a regular pace. Cannot work in fast paced production. Could an individual with those limitations perform Claimant's past work? (Tr. 58).

The VE responded that given the hypothetical limitations, the above-limited individual could perform Plaintiff's past relevant work as a press operator (Tr. 58).

The ALJ posed another question:

> [T]his individual is limited to working at the sedentary level. He can lift up to 10 pounds occasionally. He can stand for 10 minutes. He can sit for 10 minutes at which time he needs a sit/stand option. He can occasionally climb

---

[4] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

>ladders, ropes, ramps, balance, stoop, kneel, crouch, and crawl. He has no other particular physical limitations other than he is limited in nighttime vision. So he shouldn't be driving at night. If that individual can perform simple, routine, repetitive tasks can [he] perform Claimant's past work? (Tr. 59).

The VE found the second hypothetical question would preclude Plaintiff's former work but would allow the individual to perform the unskilled, sedentary work of an assembler (33,900 jobs in the State of Michigan); machine operator tender (5,000); and machine tender (4,500) (Tr. 59).

The VE testified that if the second hypothetical individual were limited by "a separate limitation in the area of concentration, persistence, and pace," in which he had to be "reminded of tasks three times a day" and was off task for 15 percent of the day or longer, all work would be precluded (Tr. 60). Likewise, he found that if the same individual required "eight or more unscheduled work breaks in an eight-hour workday" due to an inability to "sit and stay on task," all work would be precluded (Tr. 60). The VE found that if the same individual were required to miss work three or more days a month, due to medication side effects and doctors' appointments, all work would be precluded (Tr. 60). Finally, the VE testified that if Plaintiff's testimony of physical and mental limitations were fully credited, all work would be precluded (Tr. 60-61).

**D. The ALJ's Decision**

Citing the medical records, the ALJ found that from December 31, 2006 through November 15, 2011, Plaintiff experienced the severe impairments of "anxiety disorder, dysthymic disorder, dependent personality disorder, and cognitive (memory) disorder" but

that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22). The ALJ found that during the same period, Plaintiff had a residual functional capacity ("RFC") "for a full range of work at all exertional levels" but was "unable to engage in sustained work activity on a regular and continued basis eight hours a day, five days per week, and for a 40-hour week" due to "decreased mental functioning" (Tr. 23). He found that for that period, Plaintiff was disabled (Tr. 24-26).

For the period from November 16, 2011 through the date of the decision, the ALJ found that while Plaintiff experienced the same severe impairments as found above, the treating and consultative records showed that Plaintiff's condition had improved (Tr. 27). The ALJ cited December 13, 2011 psychiatric records showing that Plaintiff was "'doing quite well'" (Tr. 28). He relied on Dr. Winkler's November 15, 2011 conclusion that Plaintiff could perform "basic one or two-step" tasks (Tr. 24, 28). For the newer period, the ALJ found that Plaintiff experienced mild limitation in activities of daily living and social functioning and moderate limitation "concentration, persistence, or pace" (Tr. 26). The ALJ found that beginning on November 16, 2011, Plaintiff retained the RFC to perform "work at all exertional levels . . . limited to simple, routine, repetitive tasks" (Tr. 27). The ALJ concluded that Plaintiff was capable of performing the past relevant work of press operator as of November 16, 2011 (Tr. 28).

### III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine

whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence,

whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### A.  Plaintiff's Motion for Summary Judgment

Plaintiff argues that the hypothetical question to the VE did not account for his full degree of impairment.[5] *Plaintiff's Brief* , 7-10, *Docket #8* (citing Tr. 58-61). He contends that the omission of his professed limitations of physical impairment, rudimentary math skills, and concentrational problems from the hypothetical question forming the basis of the RFC invalidates the determination that he was capable of performing his past relevant work as a press operator (Tr. 27). *Id.* at 7-8 (citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)).

Defendant, arguing that substantial evidence supports the ALJ's findings, contends that Plaintiff's counsel, Richard J. Doud, has waived his arguments for remand by failing to

---

[5]Plaintiff makes no reference to the fact that the ALJ's decision was partially favorable. The Court assumes that he is disputing only the finding that the disability ended as of November 16, 2011.

provide more than undeveloped and inapplicable arguments. *Defendant's Brief* at 9-10.

The brief by Mr. Doud contains exactly 12 sentences pertaining to his client's case. Nine of the sentences simply recount Plaintiff's hearing testimony but do not cite any support from the treating or consultative records to support the claims. *Id.* at 9. In the remaining three sentences, counsel argues that the ALJ ought to have adopted the VE's testimony regarding Plaintiff's alleged need to miss three or more days of work each month. *Id.* at 10 (citing Tr. 60). He notes that the need to miss three days each month would result in a disability finding. Again, he does not cite the medical records for any support for such a limitation.

The remainder of the brief contains the same boilerplate found in every one of Mr. Doud's briefs, whether applicable or not. For example, an entire page of the four-page brief is devoted to a recitation of case law pertaining to the deference accorded a treating source. *Id.* at 8-9. However, counsel does not cite a treating source who found that Plaintiff experienced greater limitations than those found in the RFC. My own review of the transcript shows that none of Plaintiff's physicians offered an opinion of disability or limitation.[6] While Mr. Doud argues in passing that Plaintiff's claims of physical limitation were not credited, my review of the medical transcript does not reveal any support for his allegations of lifting or other exertional limitations. *Defendant's Brief,* 13, fn. 6, *Docket #14.*

---

[6] While one nurse found that Plaintiff experienced marked psychological limitations, she was not "an acceptable source." 20 C.F.R. §§ 404.1513, 416.913. Thus, her opinion was not entitled to any particular deference (Tr. 425-426).

Mr. Doud's issue statement (identical to the issue statement found in virtually all of his briefs) faults the ALJ for excluding some of Plaintiff's relevant limitations from the hypothetical question. However, he makes no mention of the fact that in the present case, the ALJ made a Step Four determination that Plaintiff could return to his former work, and thus, did not require the use of a vocational expert in making the determination.

As noted by Defendant, Mr. Doud's failure to develop cogent arguments on behalf of his clients has resulted in waiver of such arguments in numerous cases in this District.[7] *Id.* at 8-9, fn 3. In contrast, where claimants filing complaints under 42 U.S.C. 405(g) are unrepresented by counsel, other judges in this district have followed the reasoning set forth in *Wright v. Commissioner of Social Sec.* 2010 WL 5420990, *2 (E.D.Mich. December 27, 2010) by reviewing the transcript for possible grounds for remand even where a claimant has failed to even file a summary judgment motion. In *Wright*, Judge Friedman, citing *Kenney v. Heckler,* 577 F.Supp. 214 (N.D.Ohio 1983), held as follows:

> "[T]his Court holds that a complaint filed pursuant to 42 U.S.C. § 405(g) appealing the Secretary's final decision denying Social Security disability benefits, may not be dismissed for failure of the plaintiff to prosecute when the plaintiff fails to file a summary judgment motion as requested by the Magistrate.... Stated another way, once the plaintiff has filed a complaint

---

[7]A number judges of this Court have criticized Plaintiff's counsel for his penchant for raising generalized but undeveloped arguments lacking citation to or support in the record, effectively "inviting the Judges of this District to formulate arguments and search the record on his clients' behalf...." *Fielder v. Commissioner of Social Sec.*, 2014 WL 1207865, *1, fn. 1 (E.D.Mich. 2014)(Rosen, C.J.)(citing cases). In this case, we are faced with yet another argument that is long on boilerplate recitations of well-established law and short on factual support.

stating his grounds for appeal from the Secretary's decision, he has done all that is required of him by § 405(g)."

Ironically, applying the concept of waiver to Mr. Doud's half-baked briefs, while considering all possible grounds for remand in the *pro se* cases, would result in a more thorough and fair review for a *pro se* individual than one represented by Mr. Doud.

As discussed below, there is a significant but unraised error in the ALJ's findings that requires a remand. As I have done in the past, *see Coburn v. Commissioner of Social Sec.*, 2014 WL 4388564 (E.D. Mich. 2014)[8], and in the interests of justice, I will adopt the *Wright* approach and address this issue on the merits.

### B. Grounds For Remand

ALJ Kent's finding that Plaintiff was disabled for the period between December 31, 2006 and November 15, 2011 is well supported and does not warrant remand. At issue is the ALJ's determination that Plaintiff was capable of returning to the past relevant work as a press operator as of November 16, 2011 (Tr. 28-29). In support of the determination, the ALJ cited Dr. Winkler's November 15, 2011 observation that Plaintiff appeared exhibited anxiety but was socially appropriate with "fair to good" concentration, and an intact thought

---

[8] In *Coburn*, I recommended remand for benefits in a case where Mr. Doud failed to discover that because his client had reached age 50 prior to the administrative decision, she would entitled to benefits as of her 50th birthday pursuant to the ALJ's Step Five finding that she was limited to sedentary, unskilled work. Although the Commissioner did not file objections, Judge Michelson adopted the Report and Recommendation in part, remanding for further proceedings rather than for benefits, but nevertheless reviewing the unraised issue. *See Coburn v. Commissioner of Social Sec.*, 2014 WL 4386716 (E.D. Mich. 2014).

process (Tr. 28, 386-388). The ALJ also cited the finding that Plaintiff appeared well-groomed and neatly dressed and Dr. Winkler's conclusion that Plaintiff was capable of one or two-step tasks (Tr. 28, 386-388). Consistent with Dr. Winkler's "one or two-step tasks" findings, the RFC crafted by ALJ Kent limited Plaintiff to "simple, routine, repetitive tasks" (Tr. 27). So far, so good.

However, Plaintiff's past relevant work as a press operator (as determined by VE Browde) is rated as SpecificVocational Preparation ("SVP") 5 work, placing the job in the "skilled" category[9] (Tr. 310); SSR 00–4p, 2000 WL 1898704, *3 (December 4, 2000). VE Browde did not simply categorize the former job at SVP 5, but found that the former work corresponded to Dictionary of Occupational Titles ("DOT") job code of 614.482-014 (Tr. 310). DOT job code 614.482-014 lists the job at SVP 5.[10]

The administrative record is wholly unsupportive of the conclusion that Plaintiff could perform skilled work. Numerous cases have noted that an RFC including the modifiers "simple, routine, and repetitive tasks," as found in the present RFC, would by itself indicate

---

[9]

SVP measures the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C, http://www.occupationalinfo.org/appendxc_1.html#II (last visited on September 15, 2014). "[U]nskilled work corresponds to an SVP of 1–2; semi-skilled work corresponds to an SVP of 3–4; and skilled work corresponds to an SVP of 5–9 in the DOT." SSR 00–4p, 2000 WL 1898704, *3 (December 4, 2000).

[10]http://www.occupationalinfo.org/61/614482014.html (last visited September 15, 2014).

a limitation to unskilled work, or possibly, the low end of semiskilled work. *See Andree v. Commissioner of Social Sec.,* 2012 WL 1094662, \*6 (W.D.Mich. March 13, 2012)("residual functional capacity . . . for simple, repetitive and routine work" inconsistent with the ability to perform skilled work); *See Engebrecht v. Colvin,* 2013 WL 4604597, \*18 fn 3 (E.D.Mich.,August 29, 2013)("simple, routine and repetitive work tasks" limitation would preclude former semiskilled work); *Heppell-Libsansky v. Commissioner of Social Security,* 170 Fed.Appx. 693, 696, 2006 WL 622745, \*2 (11th Cir. March 14, 2006)(limitation to "simple routine repetitive tasks" would restrict claimant to "unskilled and low-end, semi-skilled" work).

Moreover, Dr. Winkler's November 15, 2011 observations forming the basis of the non-disability determination cannot be read to state that Plaintiff was capable of skilled work (Tr. 28, 388). Dr. Winkler found that Plaintiff was capable of performing "basic 1-2 step/direction tasks" (Tr. 388). I am unaware of any case law stating that the ability to perform one or two-step tasks would allow for the performance of skilled work. While the ALJ cited the treating notes from the last half of 2011 indicating that Plaintiff's mental condition was improving, the same records also note that Plaintiff was unable to comprehend a letter sent to him by the SSA (Tr. 450) and was unable to procure legal representation for the SSA claim without the help of his case manager (Tr. 458). November 2, 2011 treating notes state that Plaintiff was "the same as every other visit: very anxious, fidgety, and scattered" (Tr. 468). While the treating records contain support for a finding that Plaintiff's

condition was improving, none of the consultative or treating records suggests that he would be capable of skilled work. The finding that Plaintiff was capable of performing his past relevant work is further muddled by the fact that the ALJ referred to the past work as "semiskilled," then later in the opinion, "skilled" (Tr. 24, 28).

VE's Browde's testimony that Plaintiff could perform skilled work (Tr. 58) despite the hypothetical modifiers of "simple, routine, and repetitive" does not cure the error.[11] As discussed above, the limitation of "simple, routine, [and] repetitive" would at most allow Plaintiff to perform unskilled work or work at the "low -end" of the semiskilled range. *Heppell-Libsansky, supra.* The VE's erroneous testimony that Plaintiff could perform skilled work is coupled with the ALJ's failure to inquire as to whether the vocational testimony was consistent with the information found in the DOT. SSR 00–4p "imposes an affirmative duty on ALJs to ask VEs if the evidence that they have provided 'conflicts with the information provided in the DOT.'" *Lindsley v. Commissioner of Social Sec.*, 560 F.3d 601, 606 (6th

---

[11]

While an ALJ is not required to elicit vocational testimony in making a Step Four finding, the use a VE is not prohibited. *Studaway v. Secretary of Health and Human Services,* 815 F.2d 1074, 1076 (6th Cir.1987); *Mays v. Barnhart*, 78 Fed. Appx. 808, 813–814, 2003 WL 22430186, *4 (3rd Cir. October 27, 2003) ("At step four of the sequential evaluation process, the decision to use a vocational expert is at the discretion of the ALJ"). While " 'the ultimate responsibility for making the necessary findings at [Step Four] rests with our adjudicators ... it is appropriate for our adjudicators to consider evidence from a VE, VS ..." Merkel v. CSS, 2008 WL 2951276, *3–4 (E.D.Mich. July 29, 2008) (Lawson, J.) (citing 20 C.F.R. § 404.1560(b)). Here, the ALJ appears to have relied on the VE's response to the first hypothetical question in crafting the RFC (Tr. 27, 57).

Cir.2009)(citing SSR 00–4p, 2000 WL 1898704, *4).  The VE's testimony that Plaintiff could perform his former skilled work despite a restriction to "simple, routine, repetitive tasks" conflicts directly with the information found under DOT job code 614.482-041.  Accordingly, the ALJ's failure to make the inquiry required by SSR 00-4p does not amount to harmless error.

For these reasons, a remand for clarification and further fact-finding is required.  However, the present transcript does not establish an "overwhelming" case for disability for the period beginning November 16, 2011.  As such, the errors discussed herein do not automatically entitle the Plaintiff to an award of benefits.  *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171 (6th Cir.1994).

## VI.   CONCLUSION

 I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case be remanded for further administrative proceedings consistent with this Report and Recommendation.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th

Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: December 31, 2014

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on December 31, 2014, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager